And we move to the eighth case this morning, which is Maron v. Garcia. Good afternoon, Your Honor. Attorney Elio Sharvich on behalf of Ms. Marin and the plaintiffs. You may proceed. Your Honor, this matter comes from the District Court dismissing the plaintiff's claims for statute of limitations violations. There's specific errors with such violations, and we'll start with such dismissal. First, we'll start with 18 U.S. Code 1964C as a tolling exception provision. In that provision, it holds the time for any conduct that could have been related to the sales of securities or other matters. You can't sue under those matters, but if there's a criminal conviction of an individual related to that, then you can sue. The way that the court took a position really turns the 1964, the RICO statute upside down. For example, the tolling exception has to apply. I'm interested in that argument. Well, why wouldn't your exception turn the RICO statute upside down? It seems to me like you're reading the RICO statute, the statute, and the tolling provisions extraordinarily broadly, that I'm not sure there would be any tolling. I'm not sure there would be a four-year statute of limitations if we were to interpret it this way. First, that basically anything can extend to the statute, and then the tolling provision under subsection C applies even if that individual who engaged in the particular conduct was not a defendant in the case. Where would the limits be? Well, that's what I'll address. The issue is that some of the cases said if one defendant's convicted, you can't use that tolling exception to get other defendants in, but those were not under vicarious liability. For example, if we sued the company, the company would say, this is actions that are this, this, and this, and you can't sue right now. But if the individual for the company is convicted, then you can sue the company. So it would be a limited exception only for vicarious liability, because otherwise corporations get away with everything, because if you say that they're separate from the individual that's convicted, then the statute of limitations applies to them, and they'll turn around and argue, you can't sue us yet because our conduct is here. Why shouldn't we just, though, read the statute, read 1964C on its face? Unless the defendant has been convicted of that fraud. Congress knows perfectly well that there are vicarious liability situations, there are co-conspiracy situations, there are aiding and abetting situations, but they said the defendant. And the worst thing that happens is that you have to go through some other hoops. You have to meet the statute of limitations, or you have to bring a separate suit. You have to behave differently. Right. Again, under that exception, if you read it, and if you actually look at the exception itself, the language, it doesn't limit it to anybody, and it's not limited to corporation or person. What's it limited to the defendant? I believe the statute says the exception contained in the proceeding does not apply to an action against any person that is criminally convicted in connection with the fraud. And when the defendant, for example, when the person that works for the company is criminally convicted with the fraud, you should be able to sue after that the company. Why? I mean, instead of making it a company, let's make it a small business, and somebody is convicted under RICO. And there's an actual human who is the owner of the company or something. That person doesn't go to prison unless that person was also named as a co-defendant and found guilty by a jury. Right. But Congress never intended to confine its use of the person to any natural persons. And so it would undermine the purpose of the statute because vicarious liability is consistent with congressional intent. No, I mean, you're not understanding my example. I just, it made it simple. I mean, you can't put a corporation in prison. It'd be putting a bunch of pieces of paper in a prison cell. You certainly can criminally convict a corporation, and you can get disbarment of the ability to serve as a government contractor, and there can be criminal fines, and there can be forfeiture. I mean, there are certainly, the antitrust laws are replete with examples where criminal penalties are sought against a corporation. And so I still think you need process before somebody has been convicted. And so it makes sense that only the person convicted is the one covered by this. Well, if you were to sue the company before the person's convicted, they'll say that the conduct is not actionable, right? And they'll argue that. So what? I mean, I don't understand why that's a terrible thing. Right. But then, but right. I understand that. But they'll say it's not arguable. And the individual, the company could then escape liability. And so when an individual, a high ranking individual is convicted in relation to some kind of fraud, that exception applies solely for vicarious liability. And that's all we're saying. Because the defense will be, if we're suing the company for vicarious liability, the defense from the company will be, you can't sue us because this action is not, it's not conduct that you can sue on. Can we take a quick pause? I think we have a technical problem here. We've lost one of the lawyers. We lost Mr. Rabin. So we'll stop the clock for you, Mr. Usharovich. They're calling. Sorry about that. Oh no. No, I hope he's okay. Just a couple more minutes of anxiety, but otherwise it's okay. One minute is the same as the next. I once told Judge Zagel, if I had one minute left to live in his courtroom, if I had one minute left to live, I'd most likely stand in his courtroom. Judge Zagel says, why? And I said, because one minute in your courtroom is like an eternity. Marshall turned off my computer and the other thing. He probably liked that. Oh, he laughed. He loved it. He was a good guy. I think we're going to have him dial in. Mr. Rabin, are you there? I'm sorry. Can you hear me? I don't know if I can hear anybody. We can hear you. Can you hear us? Okay. I'm sorry. Can you give me a phone number to call into, please? We can hear you. But I don't think he can hear us. You're going to have to turn off dialing, so we can hear you. But right now, he's dialing. It's 669-254-5252, and that means he can't hear you. Okay. Okay. Okay. Okay. He'll be dialing right now. So, this is Robert Rabin. Can you hear me? Yes, we can. Your Honors and Counsel, I am so sorry. I've only done this a thousand times. I can't believe that now is the first time I'm having a problem with this. I am so, so sorry. I'm so embarrassed, and I apologize to everybody involved. These things happen. Can everybody hear her now, Ms. Biss? Mr. Cook? All right. And I can see you all as well. I just can't hear you, and apparently you can't see me. So, I am so, so sorry. May it please this honorable court. So, we're still on Mr. Usharovich, though. He's not finished. Oh, I'm so sorry. And we can see you. You can hear everybody, right? Yes, Judge. All right. May proceed, Counsel. So, a corporation can't act without its actual person. It can only conduct actions through a person. Contrary to the decisions that decided this exception, yes, you can't use other defendants who did, say, one defendant for a company did something, got convicted. You can't use that but you can use it to toll it for the company because they have a symbiotic relationship. The company can't act without that person. So, for vicarious liability, once the company receives benefits from that person's pattern of racketeering, has to be imposed, and that statute has to be interpreted that way. Because what happens is if an individual sues the company, and based on vicarious liability, they'll say, our guy, you can't sue him. It's action that's considered fraud, and until he's convicted, you can't sue us. So, we won't have standing at that point, and the case is not right. But this exception should only be limited. We're not asking to expand it the way that the other courts limited it, but limited to vicarious liability, because then it creates that problem of standing and other issues. And at this time, it looks like I have about three minutes left, which I reserve for rebuttal. So, I would ask the court to let me use the rebuttal time. That's fine. Thank you. All right. Who's going first here? This is Robert Rabin, and I represent the American Enterprise Defendants. I intend to go for approximately six minutes. May I please this court? Go ahead. And I am so sorry. This matter involves a one, but the background would be very helpful. This matter involves a $1.6 million business loan that was closed at a title company. The Bishop Partners principles were present at this, and they were represented by counsel. The loan went into default in 2008 and 2009, as the great real estate recession came on. The foreclosure action was initiated in state court in Cook County. It was successfully foreclosed. I was the attorney of record. Bishop Partnership was represented by counsel in that. There was a $1.3 million deficiency judgment that was entered. And in 2019, that judgment was revived over the objection of Mr. Yustarevich, who was representing Bishop Partnership, Michael Roybert, and his mother, plaintiff Irina Marin, in that litigation. He raised in the revival that the action should be barred by fraud and RICO. And, of course, the court rejected it because the court determined in the underlying action that the loan was valid and enforceable. In 2011, plaintiff American Enterprise Bank went down to Florida to foreclose the mortgage, mortgages, the Florida mortgages. In 2012, the counterclaims were filed by the plaintiff. Excuse me. I had a question about the Florida litigation with the Florida-based RICO counterclaims. Is that ongoing at this time? It is, Judge. In fact, actually, the RICO action was filed two and a half, approximately two and a half weeks after we filed a motion to set the Florida case for trial. And it was interestingly, this lawsuit was also filed the day after Michael Roybert, who is a counterplaintiff and has been involved in this from the beginning, he died. And then the next day, the RICO suit was filed. Okay. But it's not yet resolved. The Florida aspect of this is not yet resolved, I take it? Absolutely correct, Judge. Okay. Thank you. Thank you. So this lawsuit, so while the Florida lawsuit was filed after the RICO claims were asserted by plaintiffs in 2012, eight years before this lawsuit was filed, 2018, the bank, American Enterprise Bank, ceased its business operations. It sold its performing loan portfolio to Northbrook Bank and Trust, which is a division of Wintrust, and it closed, and it merged into AEB merger. This lawsuit was filed, and it's the VICOM-like complaint, except that this was 15 pages longer and has twice as many allegations. And the allegations can be distilled very simply into four very discreet themes. Number one, that American Enterprise Bank engaged in a fraud in connection with this loan, a fraudulent loan, and the bank's efforts to enforce this loan is itself fraudulent. Well, that's been rejected by Illinois courts when the Illinois courts affirmed the validity of this loan and entered a $1.3 million judgment that was recently revised. Theme number two, the bank, Akash Brombat, one of its officers from the SBA division, defrauded the bank and costed millions and millions of dollars. Mr. Brombat went to prison for defrauding American Enterprise Bank. That's the second scheme that comprises sort of the bulk of these RICO claims. Number three, its loan officer, Aaron Goldstein, perpetrated a scheme on the bank in which effectively he ran a little side business. He was skimming brokerage commissions for loans. This was not one of those loans. And then, of course, the fourth one is that the bank engaged in federal money laundering by ceasing its business operations and selling its loan portfolio to the Wintrust Bank entity. The bank took, the court and the district court took judicial notice of the filing of the counterclaim, and it took judicial notice of the contents of the counterclaim, namely, that they erected RICO accounts that were asserted based on the exact same facts in 2012. And the point of that, as I take it, was really notice that if you could file those Florida RICO claims at the time they were filed, you can't say that you didn't know that these things were happening, hence the statute of limitations was running. That's exactly right, Judge. And, in fact, I'll add one other thing is that as plaintiff concedes on page 19 of their brief, quote, there is complete identity between the Florida counterclaims and this RICO action. And then also he states that the claims alleged are, quote, similar, provide for similar relief, and have common facts. So that is the extent of the judicial notice about which is taken. I see I'm. Oh, my gosh. We can't hear you. Hello? Yes, there you are. We can't hear you now. Okay, sorry. If the court could indulge me, and I see I'm running out of time, I'd like to read in connection with the separate accrual two blocks, two quotes from two relevant cases cited in our brief. The first is the Pilkington case in which Pilkington is a pilot that works for United Airlines, striking pilots, replacement pilots were effectively alleging harassment. And the question relates to whether the harassment constituted a new and separate injury. Quote, the district court ruled that the injuries suffered by the plaintiffs were not new and independent injuries, but rather a single continuous course of injury, specifically ongoing emotional and physical distress designed to force the plaintiffs to either leave their employment or to lower their job performance. We agree. The injury suffered by the plaintiff has been a continuation of the initial injury that resulted from the harassment. With each new act of harassment, the adverse impact on the plaintiff's job performance may accumulate. However, the injury is not new and independent. The injury allegedly suffered by the plaintiffs was not unfamiliar, strange or different. It was the same injury that has been accumulating since 1986. Stated in another way, the injuries allegedly suffered after suit was in continuations of the same injuries previously alleged to have been suffered since 1986. That is exactly what is happening here as it relates to separate accrual. It's the same injury. It's the same enforcement of the loan that has been, that is just simply continuing. And this is just another continuation of that. I would also direct the court, and I see I do not have time to quote from it, from the Pace case, where the Pace case, cited in our brief, talks about how the initiation of the lawsuit is the final immutable act of enforcement, and then talks about how everything relating to the enforcement of that lawsuit is one continuous act that does not constitute either a new injury or a new predicate act. So, again, once for the final time, I apologize for my technical difficulties here. I can't imagine why it happened, and I thank the court for its time and its consideration. Thank you. I think we've concluded, if I'm not mistaken. Anybody else have anything to add? Yes, Your Honor. All right. Ms. Best. Thank you very much, and may it please the court. My name is Susan Best. I represent the law office of Ray Garcia and Anne Ray Garcia individually, referred to in the brief as Garcia defendants. We have adopted and incorporated all of the arguments made by A and B. In addition to those arguments, we have put forth an additional argument as to why the lawyers should be dismissed from this case. And so, when I say the lawyers, that also includes Levin, Kellogg, Lehman, Schneider, and Grossman, LLP, and Victor Petruscu, referred to as the Levin defendants. And so, the additional reason would be that plaintiff fails to state a claim based on the fact that this court has made very clear that legal services or outline that again to state a claim under 1962C. Plaintiff must show that Garcia defendants engaged in the conduct of an enterprise through a pattern of racketeering activity. So, that first element demands proof of the defendant conducted or participated in the conduct enterprise's affairs. So, in other words, the operation or management of the enterprise itself. And so, here, the allegations against the lawyers, it's very clear that the only thing that they have done is provided legal services to what should be a pretty straightforward foreclosure action on collateral that the plaintiffs themselves have identified. Now, we've pointed in the briefs to seven circuit cases, and we specifically highlighted Muskegon Hotels as being very similar in the fact that, you know, if anything, the Garcia defendants and the Levin defendants are even further removed from the alleged enterprise than in Muskegon. So, the lawyers in that case, they were a part of the initial fraudulent loan, and it was found that they here, Garcia defendants and Levin defendants, they weren't a part of the initial loan that was allegedly fraudulent. They weren't a part of the initial foreclosure of the business, and they only come into play when there's a foreclosure, again, on collateral that plaintiffs themselves identified for the loan and after the Illinois court had said that the loan was legitimate. So, it can't be said that the Garcia defendants and Levin defendants had any type of and any other conclusion would be that any business, any individual who provided any type of service to an alleged racketeering enterprise would be subject to legal liability. So, I see that's my time. We respectfully request that the court affirm the district court's decision and dismiss plaintiff's complaint. Thank you. All right. I think we've concluded. I think we have Mr. Coakley for just a minute. Is that right? Yes. Thank you. May it please the court. Jonathan Keckley on behalf of the Levin defendants. If there are no further questions, we'll rest on the arguments that have been put forth by the co-appellees here, but we did want to make ourselves available if there were any questions. All right. And if there are no questions, then we'll rest and join the arguments asserted before. Thank you. I think that does conclude. Your Honor, I think, oh, I have some rebuttal time, I think. All right. I apologize. So, the first, in responding to Mr. Raven, when they said that the judgment was reinstated or otherwise revived in 2019, that's limited jurisdiction and it's limited to two questions where they serve properly those things and so you can't raise any other issues. Moreover, Plaintiff Marin and Plaintiff Michael Friedman and I believe Plaintiff Roybert were not part of that judgment. That judgment was against the company and there was also another discharge of bankruptcy. Second of all, Mr. Raven told you that the parties were present at the closing when the documents were signed. Mr. Goldstein admitted he never spoke to the parties. A handwriting expert was hired by the defendants who determined that the mortgage documents were not signed and that it was all admitted. These people weren't there. And additionally, Mr. Raven told you that Goldstein had a side scheme in addition to a side scheme with his wife where they were giving out instead of originating loans in their own bank, they were giving loans. He would transfer it to his wife who originated, take a fee and he would get a fee. There were other eight loans that he admitted to that weren't related to that side scheme where he used the same things. He altered tax returns and there was, if you look, there's tremendous amount of money back and forth, back and forth between him and Steve Weissman who did eight other loans. Even the district court found that he inflated the appraisal here without the plaintiff's knowing. So there was more than that. On top of that, Akash Brahamat did 40 SBA loans in the same pattern and both Goldstein admitted that the bank and the owners of the bank were aware of it. Moreover, as the court, as the defendants have said that the new lawyers weren't part of the proceedings, right? So their conduct is new that they weren't part of the loan and those other things. And in the first case, Garcia filed a petition saying that Mr. Friedman owes $1.8 million as a guarantor. That was false. That was dismissed. Then they did it again. Then they did it again in the third complaint, but at no time was Mr. Friedman a guarantor and there is no guarantee. They said they had a guarantee. They said they had a note. None of that was true. And this has continued, continued. Then they hired a new lawyer in 2016, which would be Mr. Petrusco, who knowing that the, that the knowing after having a fight, a deposition, after fighting for discovery, knew that Mr. Goldstein did not, that the parties weren't there, that these frauds were committed because he was there during the deposition when Goldstein admitted. Rather than tell his clients or otherwise, they chose to affect the initial fraud and using false pleadings in the court, false records in conjunction with their clients, chose to consummate the fraud and get it going even further. Moreover, there's future injury here. And that, as we've said in our brief, there's future injury and they're subjected to the mortgage and whether it's taken or not, that's the final injury. And the other part is the professional services were addressed in my brief. And so that explains it. When you file, it's different when your client gives you something you don't know about it. But when you draft and assist your clients in making false documents, you've gone beyond just providing professional legal services. And there's no, no blanket to RICO liability by saying it's professional services. That would turn the statute upside down because every professional would be, could racketeer all they want and say, we didn't do anything. So with that, your honor, we rest. Or your honors, I apologize. Sorry. Thank you counsel. And let me make sure that we haven't deprived anybody from their time allocated, including the judges. All right. The case will be taken under advice.